1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10
11

ECKHARD BERNARDY,

12                        Plaintiff,

13              v.

14    ROBERT A. POWELL,

15                        Defendant.

16

Case No.  C04-5604RJB

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

17

18        This matter comes before the court on Plaintiff's Motion for Summary Judgment and

19    Memorandum in Support thereof Re: Priority and Inequitable Conduct (Dkt. 37), on Plaintiff's Motion

20    for Summary Judgment and Memorandum in Support Re: Counterclaim (Dkt. 32), on defendant's

21    cross-motion for summary judgment regarding the issues of priority and inequitable conduct (Dkt. 42),

22    and on defendant's cross-motion for summary judgment on plaintiff's patent infringement and

23    interference claims, and on plaintiff's damage claims (Dkt. 41).  The court has considered the

24    pleadings filed in support of and in opposition to the motions and the file herein, and has determined

25    that these motions may be resolved without oral argument.

26                                            PROCEDURAL HISTORY

27        On November 8, 1994,  U.S. Patent 5,361,570 (the '570 patent) was issued to Mr. Bernardy

28    for a brush cutting blade. On July 28, 1997, Mr. Powell filed an application in Canada for the brush

cutting blade with an improvement (improved blade).  On November 17, 1997, Mr. Powell filed a U.S.

patent application, Serial No. 08/971,454, for the improved blade and claimed priority to the Canadian patent application. On March 2, 1998, Mr. Bernardy filed a patent application entitled Rotary Shredding Blade and assigned Serial No. 09/035,936 ('936 application), which requested a patent for the improved blade. On March 2, 1999, U.S. Patent No. 5,876,700 (the '700 patent) was issued to Mr. Powell for the improved blade that was not covered by the '570 patent.

On March 10, 2000, Mr. Bernardy filed a civil action against Mr. Powell's business in the United States District Court for the Western District of Washington, *Simplar v. Powell*, C00-5144RJB, alleging that Mr. Powell had defrauded Mr. Bernardy by, among other things, stealing Mr. Bernardy's invention and falsely claiming it to be his own. During the course of those proceedings, Mr. Powell filed documents asserting essentially the same facts that he now raises in the counterclaims in the instant actions. *See Simplar v. Powell*, C00-5144RJB, Dkt. 27, December 7, 2000; Dkt. 34, Exh. B, C, and D. On January 2, 2001, the court granted Mr. Bernardy's motion for voluntary dismissal without prejudice. *Id.*

On April 4, 2001, Mr. Bernardy filed an interference proceeding (Interference No. 104,671) with the Board of Patent Appeals and Interferences of the U.S. Patent and Trademark Office, between claims in Mr. Bernardy's '936 application and Mr. Powell's '700 Patent to determine, as between Mr. Bernardy and Mr. Powell, who was the first inventor of the improvements claimed by both. The BPAI awarded priority to Mr. Powell on the claims in the '700 patent. Judgment in that proceeding was mailed June 30, 2003.

On September 21, 2004, Mr. Bernardy filed this action, asserting (1) a claim under 35 U.S.C. § 146 to declare that he is the inventor of the improved blade and that Mr. Powell engaged in inequitable conduct in prosecuting the '700 patent; and (2) a claim for equitable restitution, accounting and disgorgement.

Mr. Bernardy has now filed Plaintiff's Motion for Summary Judgment and Memorandum in Support thereof Re: Priority and Inequitable Conduct (Dkt. 37) and Plaintiff's Motion for Summary Judgment and Memorandum in Support Re: Counterclaim (Dkt. 32).

1

## SUMMARY JUDGMENT STANDARD

2          Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and

3   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

4   material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The

5   moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a

6   sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

7   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of

8   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the

9   non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

10  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

11  metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material

12  fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

13  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253

14  (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th

15  Cir. 1987).

16         The determination of the existence of a material fact is often a close question.  The court must

17  consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

18  preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service*

19  *Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

20  nonmoving party only when the facts specifically attested by that party contradict facts specifically

21  attested by the moving party.  The nonmoving party may not merely state that it will discredit the

22  moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the

23  claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  Conclusory, non

24  specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan*

25  *v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

26

27

28

1.      **Plaintiff's Motion for Summary Judgment and Memorandum in Support thereof Re: Priority and Inequitable Conduct (Dkt. 37)**

*Motion.* On August 22, 2005, Mr. Bernardy filed a motion for summary judgment, requesting that the court determine that he is the true, first, original and sole inventor of the invention contained in Claims 1-4 of the 5,876,700 (the '700) patent and Claims 42-59 of Patent Application No. 9/035,936, pursuant to Sections 146, 102(f), 102(g)(1) and (2) of the Patent Act; and that Mr. Powell engaged in inequitable conduct before the Patent Office in the prosecution and issuance of the '700 patent, rendering the patent invalid. Dkt. 8 and 37. On September 12, 2005, Mr. Powell filed a response opposing the motion and requesting that the court grant summary judgment in his favor on the issues raised in Mr. Bernardy's motion. Dkt. 42. Mr. Powell did not separately note his cross-motion for summary judgment. However, his motion is based on a direct response to the issues raised by Mr. Bernardy. All parties have had a full opportunity to present and respond to the issues raised by Mr. Bernardy in his motion for summary judgment. Mr. Powell's cross-motion for summary judgment is ripe for decision.

<u>PRIORITY</u>

*Proceeding under 35 U.S.C. § 146.* This is an action brought by Mr. Bernardy, following a decision of the BPAI that had determined that Mr. Powell had priority in the improved blade. The action is brought pursuant to 35 U.S.C. § 146, which provides as follows:

**§ 146. Civil action in case of interference.**

Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided. In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced in the suit.

Such suit may be instituted against the party in interest as shown by the records of the Patent and Trademark Office at the time of the decision complained of, but any party in interest may become a party to the action. If there be adverse parties residing in a plurality of districts not embraced within the same state, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction and may issue summons against the adverse parties directed to the marshal of any district in which any adverse party resides. Summons against adverse parties residing in foreign countries may be

served by publication or otherwise as the court directs. The Director shall not be a necessary party but he shall be notified of the filing of the suit by the clerk of the court in which it is filed and shall have the right to intervene. Judgment of the court in favor of the right of an applicant to a patent shall authorize the Director to issue such patent on the filing in the Patent and Trademark Office of a certified copy of the judgment and on compliance with the requirements of law.

On November 8, 1994,  U.S. Patent 5,361,570 (the '570 Patent) was issued to Mr. Bernardy for a brush cutting blade.  On July 12, 1996, Mr. Bernardy approached Lester Knopp for the job of cutting teeth in blank blade stock.  Mr. Knopp referred him to Performance Quality Saw Shop, Inc. owned by Mr. Powell.  Toward the end of July 1996, Mr. Bernardy contacted Mr. Powell for purposes of providing local production of Mr. Bernardy's blades, specifically, cutting saw teeth onto blade stock.  The parties worked together on producing brush cutting blades, but parted ways after a trade show in Portland in April of 1997.

Mr. Bernardy contends that (1) in 1994, he conceived of an improved blade of the '570 patent, which he diagramed in a logbook on July 12, 1994; (2)  he showed diagrams and prototypes of the improved blade to various people and worked with people to produce the improved blade; (3) he worked with Mr. Powell to produce the improved blade, but their working relationship ended in April of 1997; (4) unbeknownst to Mr. Bernardy, Mr. Powell applied for a patent on Mr. Bernardy's additional embodiment, and the patent issued March 2, 1999 as U.S. Patent No. 5,876,700 (the '700 patent).

Mr. Powell claims that, as he was working with Mr. Bernardy,  Mr. Bernardy continued to try to produce the '570 blade while Mr. Powell was trying to find the solution to the problems with that blade; that Mr. Powell  found the solution and drew his concept for the improved blade; and that Mr. Bernardy was happy with the result.  Dkt. 46, at 2.

*Legal Standard.*  An interference is a proceeding instituted in the United States Patent and Trademark Office, designed to resolve questions of priority and patentability between two or more parties claiming the same patentable invention.  *Stevens v. Tamai*, 366 F.3d 1325, 1330 Fed. Cir. 2004); 35 U.S.C. §§ 135, 146 (2000); 37 C.F.R. § 1.601(i) (2003).

The interference proceeding implements the principle of United States law that the right to a patent derives from priority of invention, not priority of patent application filing.  *Hyatt v. Boone*, 146 F.3d 1348, 1351 (Fed. Cir. 1998).  The general rule is that the first person to conceive the invention is

the first inventor, provided that when the first to conceive the invention is the last to reduce it to practice, the person who was first to conceive must have exercised reasonable diligence to his own actual or constructive reduction to practice, "from a time prior to conception by the other." *Id.*

To prevail on a patent interference claim, the junior party must establish by a preponderance of the evidence either that he actually reduced the subject matter of the interfering counts to practice before the senior party's effective filing date or that he had conceived the subject matter of the counts before the senior party's effective filing date followed by reasonable diligence from just prior to the senior party's effective filing date up to his own constructive or actual reduction to practice. *Chen v. Bouchard*, 347 F.3d 1299, 1308-09 (Fed. Cir. 2003); *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003) (citing 35 U.S.C. § 102(g) and *Marhurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Priority must be proved with corroboration where the priority relies on the testimony of he inventor. *Thomson S.A. v. Quixote Corp.*, 166 F.3d 1172 (Fed. Cir. 1999). Whether a putative inventor's testimony has been sufficiently corroborated is determined by a "rule of reason" analysis, in which "an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." *Singh v. Brake*, 317 F.3d at 1341 (quoting *Price*, 988 F.2d at 1195); *Chen v. Bouchard*, 347 F.3d at 1309.

*Discussion.* Here, Mr. Powell filed his U.S. patent application first on November 17, 1997. There is some legal question about whether he is able to use the filing date of the Canadian Patent Application, July 28, 1997, as his constructive reduction to practice date. Assuming that July 28, 1997 was the date for Mr. Powell's constructive reduction to practice, to succeed on priority Mr. Bernardy must show that either (a) he actually or constructively reduced the invention to practice prior to July 28,1997, or (b) he conceived of the invention prior to July 28, 1997 and he thereafter diligently tried to reduce his invention to practice.

The record shows that Mr. Bernardy and Mr. Powell worked together to produce blades, but there are many disputed issues of fact as to the relationship of the parties, the timing of events, the circumstances surrounding their work together, and which of the parties conceived of the idea of the improved blade. These outstanding issues of material fact preclude summary judgment for either

1    party.  Mr. Bernardy's motion for summary judgment as to priority should be denied, and Mr.

2    Powell's cross-motion for summary judgment should be denied.

3                                    INEQUITABLE CONDUCT

4         *Legal Standard.*  To prevail on a claim of inequitable conduct, the plaintiff must show clear

5    and convincing proof by legally admissible evidence that the inventor withheld material information

6    from a patent examiner or submitted false material information with the intent to deceive or mislead

7    the examiner into granting a patent. *Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306, 1312

8    (Fed. Cir. 2000) (reversing judgment of invalidity and unenforceability).  Inequitable conduct arises

9    from failure to disclose material information. *Semiconductor Energy Laboratory Co. v. Samsung*

10   *Electronics*, 204 F.3d 1368, 1373-78 (Fed. Cir. 2000) (failure to disclose even though a complete

11   reference was provided, but the reference was only partially translated); *Gradco Mfg., Inc. v. Herst*

12   *Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987); *A.B. Dick Co. v Burroughs Corp.,* 798 F.2d 1392 (Fed.

13   Cir. 1986); *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553 (Fed. Cir. 1984).

14        Mr. Bernardy contends that Mr. Powell and his attorney had in their possession prototype

15   blades stamped Simplar (Mr. Bernardy's company), that fall directly within the disputed claims, and

16   that he never disclosed those blades to the USPTO.  Mr. Bernardy contends that Mr. Powell engaged

17   in inequitable conduct rendering the patent invalid.  In response, Mr. Powell contends that the

18   existence of these blades does not support an allegation that Mr. Powell knew Mr. Bernardy was

19   producing the improved blades at the time Mr. Powell filed his patent application.

20        While Mr. Bernardy's claim is not as clear as it might be, the issue of whether Mr. Powell

21   engaged in inequitable conduct in failing to disclose prior art when he filed the patent application

22   appears, at least in part, to be dependent on resolution of who invented the improved blade.  Because

23   there is an outstanding issue of material fact as to this issue, the court should deny Mr. Bernardy's

24   motion for summary judgment as to this issue.

25        Based upon the foregoing discussion, the court should deny Plaintiff's Motion for Summary

26   Judgment and Memorandum in Support thereof Re: Priority and Inequitable Conduct.

27

28

2.      **Plaintiff's Motion for Summary Judgment and Memorandum in Support Re:**

**Counterclaim (Dkt. 32)**

On August, 19, 2005, Mr. Bernardy filed a motion for summary judgment, requesting that the court dismiss Mr. Powell's counterclaim based upon the statute of limitations.  Dkt. 32.  Mr. Powell filed a response opposing the motion and a cross motion for summary judgment.  Mr. Bernardy filed a late reply, and the court has not considered that reply in rendering the decision on this issue.

On December 9, 2004, Mr. Powell filed an answer and counterclaims, asserting the following counterclaims:

13.  Plaintiff held United States patent number 5,361,570 (the '570 patent) issued in 1994. The product did not perform well and plaintiff was unsuccessful in his attempts to market it. Plaintiff did not have the resources or expertise to design and manufacture a marketable product.

14. Plaintiff came to the defendant to secure his services, expertise and advice in the improvement, design and manufacture of his '570 patent. Plaintiff agreed that if defendant could devise improvements to the '570 patent that would make it a useful and marketable product the two of them would produce and market the product and share equally in all expenses and profits of the venture.

15. Defendant began to test the '570 product in an attempt to improve it. Defendant was successful and invented improvements that while unique, when incorporated into the 570' patent, rendered it a useful product. Those improvements form the claims of the '700 patent issued to defendant of which the defendant is the sole inventor.

16. In March of 1997 the parties agreed that defendant would attend a trade show for the purpose of determining the market for a blade using the improvements invented by defendant. The show was successful with the Grasche Company and others expressing an interest in the improved blade. Plaintiff did not want to do business with Grasche or any other company, insisting that he and defendant could produce and market the product themselves.

17. Both plaintiff and defendant originally believed that the improvements invented by defendant were covered by the '570 patent and therefore did not move to patent the improvements at that time.

18. In pursuit of plaintiff's plan to produce and market the product the parties ordered tooling and equipment having a cost of over $80,000.00 for the purpose of producing the blades. As plaintiff had no resources or credit defendant's credit was used and he was personally liable for the cost of said tooling. Defendant relied upon plaintiff's promise of a partnership in which each would share equally in the expenses and profits of the marketing of the improved blade in incurring this debt.

19. There was a great deal of interest in the improved blade. Upon discovering that the improved blade presented a significant marketing opportunity plaintiff claimed sole ownership of the improvements and began to contact various manufacturers and to attempt to market the product. Plaintiff failed and refused to pay his share of the design and manufacturing costs incurred and unilaterally terminated the partnership. This caused defendant severe financial hardship.

20. Defendant sought legal advice and learned that the improvements he had invented were patentable. To protect his improvements of the '570 patent defendant first filed in Canada as plaintiff had expressed that he had no interest in the Canadian market and had refused to speak to a Canadian company interested in the product.

21. Defendant then filed for a patent in the United States and was issued U.S. Patent No. 5,875,700, the '700 patent.

22. Plaintiff has wrongfully interfered in defendant's attempts to market the '700 patent invention by contacting potential customers, licensees and producers, filing a false claim of injury with the Consumer Product Safety Commission and other acts causing damage to defendant in an amount to be proven at trial.

Dkt. 11, at 3-5.  Mr. Powell requested damages as a result of Mr. Bernardy's wrongful interference in the marketing of the '700 blade; and for judgment of not less than $40,000 less the resale value of equipment, representing Mr. Powell's share of the expenses and debt incurred in pursuance of the agreement to jointly produce and market the product.  *Id.*  at 5.

Mr. Bernardy argues that these claims are barred by the statutes of limitations applicable to Mr. Powell's counterclaims.  He contends that Mr. Powell knew of the claims he now asserts at least as early as March 17, 1997, when he, through counsel, sent a letter to Mr. Bernardy's company, alleging that Mr. Powell failed to follow through on a letter of intent to have Mr. Powell manufacture 17,200 shredding blades, and demanding that Mr. Bernardy enter into a contract in accord with the letter of intent. Dkt. 35, Exh. 4.  Mr. Bernardy contends that Mr. Powell further showed that he knew of his claims when he asserted the same facts in the context of *Simplar v. Powell*, C00-5144RJB, Dkt. 20; and Dkt. 34, Exh. B, C. and D.  That case was dismissed on January 2, 2001.

This action was filed September 21, 2004.  Mr. Powell alleged his state tort-based counterclaims in his December 9, 2004 answer to the amended complaint.  Mr. Bernardy argues that these claims are barred by (1) the two or three year statute of limitations for a partly oral or unwritten contract (RCW 4.16.080(2)); (2) the three year statute of limitations for an action for unjust enrichment (RCW 4.16.080(3) or (4)); the three year statute of limitations for claims arising from an alleged partnership agreement that is unwritten (RCW 4.16.080(3) and *Laue v. Elder*, 106 Wn.App. 699, 711 (2001); and the three year statute of limitations for claims of interference with business expectancy (RCW 4.16.080(2) and *City of Seattle v. Blume*, 134 Wn.2d 243 (1997).

In response, Mr. Powell argues that the statue of limitations cannot be raised in defense of a counterclaim arising out of the same transaction, and that the counterclaims arise here out of the same

transaction upon which Mr. Bernardy bases his claims for patent infringement and interference, and for damages.  Statutes of limitations never run against defenses arising out of the transactions sued upon.  *Ennis v. Ring*, 56 Wn.2d 465, 471 (1959); *J.C. Felthouse & Co. v. Bresnahan*, 145 Wn. 548, 549 (1927); *Allis-Chalmers Corp. v. City of North Bonneville*, 113 Wn.2d 108, 112 (1989).  At issue in this motion, however, is not a defense that Mr. Powell seeks to assert in response to a claim Mr. Bernardy has asserted.

In this action, Mr. Bernardy has filed a civil action pursuant to 35 U.S.C. § 146 to determine priority of invention in the improved blade.  In addition, Mr. Bernardy has alleged a cause of action for equitable restitution, accounting and disgorgement.  As discussed below, Mr. Bernardy's claims are the subject of Mr. Powell's cross motion for summary judgment to dismiss the claims on the basis of the statute of limitations.  Mr. Powell filed counterclaims, over which this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The counterclaims plead common law causes of action sounding in tort.  Under Washington law, the longest limitation period which would arguably apply to Mr. Powell's counterclaims would be three years.  Mr. Powell had notice of his claims by March 17, 1997, when his counsel sent the letter to Mr. Bernardy, requesting that Mr. Powell follow through with the contract related to the letter of intent, but surely by the time he filed pleadings in *Simplar v. Powell*, C00-5144RJB, which was dismissed on January 2, 2001.  Mr. Powell's counterclaims, even if they relate back to September 21, 2004, the date of filing of this case, were filed more than three years after he knew or had reason to know of the counterclaims.  Mr. Bernardy's motion for summary judgment, requesting that the court dismiss Mr. Powell's counterclaims as barred by the applicable statute(s) of limitations should be granted, and Mr. Powell's counterclaims should be dismissed.

### 3.    Defendant's Cross Motion For Summary Judgment (Dkt. 41)

In his response to Mr. Bernardy's motion to dismiss the counterclaims, Mr. Powell filed a cross motion for summary judgment, requesting that the court dismiss all of Mr. Bernardy's claims as time barred.  Dkt. 41.  This cross motion raises issues in addition to those Mr. Bernardy raised in the underlying motion to dismiss the counterclaims.   The motion should have been properly noted, pursuant to Local Rule CR 7, so that the parties have the opportunity for full briefing on the merits.  Accordingly, this motion should be renoted to enable the parties to respond and reply to the motion.

1    Therefore, it is hereby

2    **ORDERED** that Plaintiff's Motion for Summary Judgment and Memorandum in Support

3    thereof Re: Priority and Inequitable Conduct (Dkt. 37) is **DENIED**.  Defendant's cross-motion for

4    summary judgment regarding the issues of priority and inequitable conduct (Dkt. 42) is **DENIED**.

5    Plaintiff's Motion for Summary Judgment and Memorandum in Support Re: Counterclaim (Dkt. 32) is

6    **GRANTED**, and the defendant's counterclaims are **DISMISSED** as barred by the applicable

7    statute(s) of limitations.  Defendant's cross-motion for summary judgment on plaintiff's patent

8    infringement and interference claims, and on the damage claims (Dkt. 41) is **RENOTED** for

9    consideration on the court's October 7, 2005 calendar.  The parties may file responsive pleadings in

10   accord with Local Rule CR 7.

11   The Clerk is directed to send uncertified copies of this Order to all counsel of record and to

12   any party appearing *pro se* at said party's last known address.

13   DATED this 19th day of September, 2005.

14

15

16                                                    Robert J. Bryan
                                                      United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 11